
**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. EC-14-1390-PaJuKu |
| | ) |
| BRIAN COLIN WARREN and PATRICIA WARREN, | ) Bankr. No. 08-31697 |
| | ) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| BRIAN COLIN WARREN; PATRICIA WARREN, | ) |
| | ) |
| Appllants, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| JIM YOUNG; CAROL YOUNG, | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on May 14, 2015
at Sacramento, California

Filed - May 28, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Robert S. Bardwil, Bankruptcy Judge, Presiding

Appearances:   William Steven Shumway of Law Office of W. Steven Shumway, argued for appellants Brian and Patricia Warren; Walter R. Dahl of Dahl Law, argued for appellees Jim and Carol Young.

Before: PAPPAS, JURY, and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

Chapter 11[2] debtors Brian and Patricia Warren ("Debtors") appeal the order of the bankruptcy court dismissing their bankruptcy case pursuant to § 1112(b).  We AFFIRM.

## I.  FACTS

On August 21, 2008, Debtors filed a chapter 11 petition.  In their schedule D, Debtors listed appellees Jim and Carol Young (the "Youngs") as creditors holding a fully secured claim in the amount of $40,000.  Debtors did not indicate what collateral secured the Youngs' claim.

On October 8, 2008, Debtors filed an amended schedule D that listed the Youngs' claim in the same amount, but Debtors now indicated that the claim was unsecured.  Debtors also stated in the amended schedule that the Youngs' claim was secured by a "third deed of trust" on seventy-one acres of "raw land" in Auburn, California (the "Real Property").  Neither the original nor amended schedule D Debtors filed listed the claim as contingent, unliquidated, or disputed.

On August 20, 2009, Debtors filed their proposed disclosure statement.  In it, Debtors explained that they were sole proprietors who intended to develop the Real Property, but due to the downturn of the real estate market, as well as cost overruns and delays, the development failed.  In addition, as is relevant in this appeal, Debtors' disclosure statement indicated that, in their proposed chapter 11 plan (the "Plan"), the Youngs and other creditors claiming a secured interest in the Real Property would

---

[2]  Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

be deemed to be unsecured creditors and would be paid along with the other general unsecured creditors. The disclosure statement explained that plan payments to unsecured creditors would begin "one month after [the Plan] is confirmed and will end when the creditor has received 9.0% of its allowed claim." A copy of the Plan was attached to the disclosure statement. It provided that Debtors "will make a $1,000 payment per month to [unsecured] creditors . . . until the creditor has received 9% of its allowed claim. Debtor[s] will distribute pro-rata payments to these creditors from [their] operations on a monthly basis beginning one month after the [P]lan is confirmed."

The bankruptcy court approved Debtors' disclosure statement on December 5, 2009, and it confirmed the Plan on February 6, 2010. The bankruptcy court closed the bankruptcy case on October 5, 2012.

On May 23, 2014, the bankruptcy court granted a motion by Highland Crofters, LLC, another creditor of Debtors, to reopen the bankruptcy case.[3] Then, on June 10, 2014, the Youngs filed a motion to convert Debtors' case to chapter 7. To support the motion, the Youngs' declaration represented that they had received no payments from Debtors after confirmation even though the Plan

[3] The parties did not provide the Panel with a copy of the motion to reopen the bankruptcy case. We have reviewed it in the bankruptcy court's docket, and it explains that Highland Crofters, LLC, is the "current holder of the promissory note, previously held by Samuel R. Spencer, secured by a first deed of trust on [the Real Property.]" Bankr. Dkt. No. 386. The creditor asked the bankruptcy court to reopen the bankruptcy case for a "clarification of [the] terms of [the] order confirming the plan." Id. We exercise our discretion to consider pleadings appearing on the docket in the underlying bankruptcy case. Fed. R. Evid. 201; O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

-3-

provided that monthly payments would be made to them beginning in March 2010. Other declarations accompanying the motion, authored by creditors Marilyn Peters of Peter's Drilling, Paul Ferreira of Don Robinson Sand and Gravel, and Howard Anderson of Anderson Sierra Pipe Company; each averred that the creditors held allowed general unsecured claims under the Plan, but had received no payments after confirmation of the Plan.

On June 17, 2014, Debtors filed an objection to the Youngs' proof of claim. Debtors asked the bankruptcy court to disallow Youngs' claim because the proof of claim was filed one day after the claims bar date. On July 8, 2014, Debtors filed an amended schedule F that now listed the Youngs' claim, as well as the claims of every other creditor on the amended schedule (except for Jack and Laura Warren), as unsecured, nonpriority claims that Debtors disputed.

On July 8, 2014, Debtors filed an opposition to the Youngs' motion to convert. In the opposition, Debtors now conceded that, even though the Youngs' proof of claim had been filed after the deadline, the claim was "deemed filed" under § 1111(a)[4] because they had listed it in their original and amended schedules and had not alleged the claim was disputed, contingent, or unliquidated. Because of this, Debtors offered to pay the Youngs the full amount they were owed under the Plan provided the bankruptcy court denied the Youngs' motion to convert. Debtors further argued that they

_____

[4] Section 1111(a) provides: "A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated."

-4-

had paid a total of $52,000 to various other unsecured creditors under the Plan and, therefore, they had substantially complied with the payment terms of the Plan. Debtors did not dispute that they had not paid the Youngs, Don Robinson Sand and Gravel, and several other general unsecured creditors as required by the Plan.

Before the July 23, 2014 hearing on the Youngs' motion to convert, the bankruptcy court issued a tentative decision. In it, the bankruptcy court found that the Youngs had shown cause existed under § 1112(b)(1) to dismiss or convert Debtors' case because Debtors were "in material default of the terms of the confirmed plan" with respect to their obligation to pay unsecured creditors. Specifically, the bankruptcy court found and concluded:

> [Debtors] have failed to make any payments to the Youngs or Don Robinson Sand & Gravel, a fact the Youngs have demonstrated by way of admissible evidence and which [Debtors] do not dispute. Further, [Debtors] do not dispute that they have made no payments on any claims of creditors who did not file timely proofs of claim . . . . The fact that [Debtors] have opposed [the Youngs' motion] without proposing to pay any of the 15 creditors who did not file claims or who filed late claims **except** the Youngs, despite [Debtors'] asserted newfound awareness of § 1111(a), leads the court to conclude that [Debtors] do not intend to comply with the terms of the [P]lan.

(emphasis in original) (footnote omitted).

In the tentative decision, the bankruptcy court next addressed whether conversion or dismissal was in the best interest of creditors and the estate under § 1112(b)(1). The court noted that the Youngs' motion had requested conversion of the case to chapter 7, rather than dismissal, because Debtors' interest in the Real Property should be revested in the bankruptcy estate and administered for the benefit of Debtors' creditors. Concerning

-5-

this argument, the court observed that it "ha[d] no evidence of the current value of the [Real Property] or the amount of the senior lien against it, or of other assets that might be available to provide [a] distribution to creditors." The court further stated that, assuming the case was converted, it was "not convinced the language of the [P]lan and disclosure statement was sufficient to allow the [Real Property] to be revested in the estate under applicable law. See Pioneer Liquidating Corp. v. United States Trustee (In re Consolidated Pioneer Mortgage Entities), 264 F.3d 803, 807-08 (9th Cir. 2001)." The court advised the parties that it would consider whether conversion or dismissal would be in the best interest of creditors and the estate at the hearing.

Finally, the bankruptcy court stated it intended to strike, as being filed in bad faith, Debtors' amended schedule F wherein Debtors claimed, more than six years after their case was filed and four years after the Plan was confirmed, that most of their general unsecured creditors' claims were disputed.

At the hearing, after argument by the parties, the bankruptcy court announced it would adopt its tentative decision that adequate cause existed to dismiss or convert Debtors' case under § 1112(b)(1). The court then addressed whether the case should be converted or dismissed. Despite the relief sought in their motion, the Youngs now requested dismissal as opposed to conversion of the case to chapter 7. Debtors also requested that the case be dismissed. The bankruptcy court concluded it would dismiss the case for the reasons stated in its tentative

-6-

decision.[5]

An order dismissing the chapter 11 case was entered on July 25, 2014. Debtors filed a timely appeal on August 6, 2014.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in dismissing the bankruptcy case.

## IV. STANDARD OF REVIEW

"We review de novo whether the cause for dismissal of a Chapter 11 case under [] § 1112(b) is within the contemplation of that section of the Code." Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994).

Upon a finding of "cause" under § 1112(b)(1), "[w]e review the bankruptcy court's decision to dismiss a case under an abuse of discretion standard." Sullivan v. Harnisch (In re Sullivan), 522 B.R. 604, 611 (9th Cir. BAP 2014) (citing Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999)). A two-step analysis is used to determine whether the bankruptcy court abused its discretion: (1) we review de novo whether the bankruptcy court applied the correct legal standard to the relief requested; and (2) we review the bankruptcy court's findings of fact for clear error. In re Sullivan, 522 B.R. at 611-12 (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc)). "We must affirm the bankruptcy court's fact findings unless we

---

[5] The bankruptcy court also dismissed, as moot, Debtors' objection to the Youngs' proof of claim.

-7-

conclude that they are illogical, implausible, or without support in the record." In re Sullivan, 522 B.R. at 612 (citing Hinkson, 585 F.3d at 1262).

## V.  DISCUSSION

### A.  Debtors' arguments on appeal.

Debtors argue that the bankruptcy court erred when it found that cause existed to dismiss their case under § 1112(b)(1). Debtors allege that they had made fifty-two, $1,000 monthly payments under the Plan, but paid only those creditors who had filed "timely" proofs of claim. Debtors assert that they intended to pay the other creditors who were listed in their schedules who had not filed a proof of claim, or had filed tardy claims, at some later time, and would have done so had the bankruptcy court not dismissed the bankruptcy case. Because of this, Debtors argue that they had substantially complied with the terms of the Plan, and that dismissal of the case under these circumstances was inappropriate.

In addition, Debtors argue that, as provided in § 1112(b)(2), unusual circumstances existed allowing them to avoid dismissal of their case, even if they were in default under the Plan. Debtors point out that they were making payments under the Plan to most creditors, and that they could have cured any default in payments to the other creditors. Debtors insist that "[i]n liquidation, [] creditors would have received nothing. The continuation of the [P]lan was in the best interest of creditors." Appellants' Op. Br. at 7.

-8-

**B. The bankruptcy court did not err in finding cause to dismiss Debtors' case pursuant to § 1112(b)(1).**

Section 1112(b)(1) provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Section 1112(b)(4) sets forth a nonexhaustive list of what constitutes "cause" to convert or dismiss a case under § 1112(b)(1). In re Consol. Pioneer Mortg. Entities, 248 B.R. at 375. Included in the list of items constituting "cause" to convert or dismiss is a "material default by the debtor with respect to a confirmed plan." § 1112(b)(4)(N). "The movant bears the burden of establishing by preponderance of the evidence that cause exists." In re Sullivan, 522 B.R. at 614 (citing StellarOne Bank v. Lakewatch, LLC (In re Park), 436 B.R. 811, 815 (Bankr. W.D. Va. 2010)).

If the bankruptcy court finds that cause exists to grant relief under § 1112(b)(1), it must then: "(1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interest of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interest of creditors and the estate." In re Sullivan, 522 B.R. at 612 (citing § 1112(b)(1), (b)(2), and Shulkin Hutton, Inc., P.S. v. Treiger (In re Owens), 552 F.3d 958, 961 (9th Cir. 2009)). In

-9-

choosing between dismissal or conversion, a bankruptcy court must consider the interests of all creditors. Id. (citing In re Owens, 552 F.3d at 961). "If cause is established, the decision whether to convert or dismiss the case falls within the sound discretion of the court." Id. (citing Mitan v. Duval (In re Mitan), 573 F.3d 237, 247 (6th Cir. 2009) and Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP 2006)).

Even if cause exists, § 1112(b)(2) provides an exception to the requirement that a chapter 11 case be converted or dismissed. For the exception to apply: (1) the debtor must prove and the bankruptcy court must "find and specifically identify" that "unusual circumstances" exist to show that conversion or dismissal is not in the best interest of creditors and the estate; and (2) the debtor must prove that the cause for conversion or dismissal was reasonably justified, and that basis for dismissal or conversion can be "cured" within a reasonable time.[6] As noted,

--------

[6] More precisely, § 1112(b)(2) provides:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that —
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

(continued...)

-10-

the debtor bears the burden of proving the unusual circumstances are present in the case that render dismissal or conversion not in the best interest of creditors or the estate. Sanders v. United States Tr. (In re Sanders), No. CC-12-1398, 2013 WL 1490971, at *7 (9th Cir. BAP Apr. 11, 2013) (citing In re Orbit Petroleum, Inc., 395 B.R. 145, 148 (Bankr. D.N.M 2008)); see also 7 COLLIER ON BANKRUPTCY ¶ 1112.05[2] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.) ("Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate.").

In this case, we conclude that the bankruptcy court did not err in finding "cause" under § 1112(b)(4)(N), nor did it abuse its discretion in dismissing Debtors' case. First, the bankruptcy court found that, as provided in § 1112(b)(4)(N), cause existed because Debtors were in material default under the Plan. Debtors had failed to make the required payments to the Youngs and several other unsecured creditors for over four years. The Plan clearly required that Debtors begin making payments to all of their unsecured creditors in March 2010. The Youngs offered undisputed evidence to show that they, along with several other unsecured creditors that held allowed unsecured claims, had received no payments after confirmation of the Plan. As the bankruptcy court

---

[6] (...continued)
  (i) for which there exists a reasonable justification for the act or omission; and

  (ii) that will be cured within a reasonable period of time fixed by the court.

-11-

observed:

> [Debtors] do not dispute that they have made no payments on any claims of creditors who did not file timely proofs of claim . . . . The fact that [Debtors] have opposed [the Youngs' motion] without proposing to pay any of the 15 creditors who did not file claims or who filed late claims except the Youngs, despite [Debtors'] asserted newfound awareness of § 1111(a), leads the court to conclude that [Debtors] do not intend to comply with the terms of the [P]lan.

The bankruptcy court's factual findings are clearly supported by the record. And it correctly concluded that Debtors' failure to make any payments to several unsecured creditors for more than four years in contravention of the Plan amounted to a material default and constituted cause to convert or dismiss the bankruptcy case under § 1112(b)(1) and (b)(4)(N). See Kenny G. Enters., LLC v. Casy (In re Kenny G. Enters.), No. BAP CC-13-1527, 2014 WL 4100429, at *14 (9th BAP Cir. Aug. 20, 2014) (noting that failure to pay creditors as required by a confirmed plan is a material default and cause for conversion or dismissal of a debtor's case) (citing AMC Mortg. Co. v. Tenn. Dep't of Revenue (In re AMC Mortg. Co.), 213 F.3d 917, 921 (6th Cir.2000)); see also State of Ohio, Dept. of Taxation v. H.R.P. Auto Center, Inc (In re H.R.P. Auto Center, Inc.), 130 B.R. 247, 256 (Bankr. N.D. Ohio 1991) (holding three missed payments to a single creditor over the course of a year was a material default of a confirmed chapter 11 plan); 7 COLLIER ON BANKRUPTCY ¶ 1112.04[6][n] ("Although the Code does not define the term material, certainly the failure to make payments when due under the plan would constitute a material default.").

In arguing that cause did not exist to convert or dismiss their case, Debtors remind us that they paid fifty-two $1,000

-12-

payments to "other" unsecured creditors under the Plan, and thus they had "substantially complied" with the terms of the Plan. While there is no evidence in the record to show that Debtors actually made these payments, even if they did, Debtors were not absolved from the material default they committed under the terms of the Plan obligating them to pay all allowed unsecured claims, including those that the bankruptcy court determined had not been paid since March 2010. In this context, whether Debtors had "substantially complied" in paying other creditors under the Plan is of no moment because that is not the applicable standard under § 1112(b)(1). Cf. Greenfield Drive Storage Park v. Cal. Para-Prof'l Servs., Inc. (In re Greenfield Drive Storage Park), 207 B.R. 913, 917 (9th Cir. BAP 1997) ("Whether the plan has been 'substantially consummated' is not determinative as to whether there has been a material default in the performance of the plan."). Simply put, the bankruptcy court did not err in finding that adequate cause existed under § 1112(b)(4)(N) to require either conversion or dismissal of Debtors' case.

Next, the bankruptcy court did not abuse its discretion when it decided to dismiss Debtors' case, as opposed to converting the case to chapter 7, after considering which option was in the best interest of creditors and the estate. The court addressed this issue in its tentative decision and expressed doubt, based upon the language of the Plan, and other reasons,[7] whether under these

---

[7] The bankruptcy court stated it was "not convinced the language of the [P]lan and disclosure statement was sufficient to allow the [Real Property] to be revested in the estate under applicable law. See Pioneer Liquidating Corp. v. United States
(continued...)

-13-

facts the Real Property, Debtors' primary asset, would "revest" in the bankruptcy estate if the court converted the case to chapter 7. After hearing from Debtors and the Youngs, who each requested dismissal rather than conversion,[8] and neither of whom disputed the court's concern about the status of Real Property upon conversion, the court determined the interests of the creditors were best served by dismissal. We find no abuse of discretion in this determination.

**C. Debtors' alternative argument under § 1112(b)(2) fails.**

Debtors note that they had paid their unsecured creditors $52,000, and that they would cure the balance owed to the other, unpaid creditors, if given an opportunity. They assert that these facts should allow them to avoid the harsh consequence of dismissal of their chapter 11 case. However, Debtors never argued

---

[7](...continued)
Trustee (In re Consolidated Pioneer Mortgage Entities), 264 F.3d 803, 807-08 (9th Cir. 2001)." In re Consol. Pioneer Mortg. Entities notes that based upon § 1141(b) property of the estate vests in the debtor upon plan confirmation unless the plan provides otherwise. Id.

[8] The Youngs, who had previously requested conversion of Debtors' case in their motion, were clearly persuaded by the bankruptcy court's concerns regarding the status of the Real Property in the event of a conversion. At the hearing, counsel for the Youngs stated:

> Your Honor, first, I would like to thank the court for its lengthy tentative ruling. We would not oppose dismissal at this time, aside from conversion. I know, in our moving papers, we ask for conversion, but with the court's concern and notation in its tentative ruling about the real property not revesting in the Chapter 7 bankruptcy estate, we would not oppose dismissal of the case.

Hr'g Tr. at 4:23-5:4, July 23, 2014.

-14-

in the bankruptcy court that these facts constituted the sort of "unusual circumstances" that justify application of the exception to dismissal codified in § 1112(b)(2). We do not consider arguments of this type made for the first time on appeal. See Mano-Y&M, Ltd. v. Field (In re Mortg. Store, Inc.), 773 F.3d 990, 998-99 (9th Cir. 2014) (stating issues not raised in the bankruptcy court are waived); Barnes v. Belice (In re Belice), 461 B.R. 564, 569 n.4 (9th Cir. BAP 2011) (stating the BAP did not need to decide arguments not raised in the bankruptcy court).

Even if Debtors had timely raised their argument, and even were the bankruptcy court inclined to agree that unusual circumstances were present, to satisfy § 1112(b)(2), Debtors would have also had to show that there was a "reasonable justification" for their failure to pay the Youngs and other unsecured creditors for over four years, and that their failure to do so would be cured within a reasonable amount of time fixed by the court. YBA Nineteen, LLC v. IndyMac Venture, LLC (In re YBA Nineteen, LLC), 505 B.R. 289, 303 (S.D. Cal. 2014). The bankruptcy court found no reasonable justification existed for their failure to make the required Plan payments, however, and, in fact, stated Debtors' conduct "leads the court to conclude that [Debtors] do not intend to comply with the terms of the [P]lan." Given these findings, all adequately supported by the record, Debtors can not rely upon § 1112(b)(2).

## VI.   CONCLUSION

The bankruptcy court did not err when it concluded that Debtors' failure to pay several creditors for four years amounted to a material default under the confirmed plan, and that cause

-15-

existed under § 1112(b)(1) to grant Youngs' motion.  It also did not abuse its discretion when it ordered that Debtors' case be dismissed as opposed to converted.  We AFFIRM the order of the bankruptcy court.